## Hurst v. Hurst, et al.

(Decided March 20, 1928.)

### Appeal from Breathitt Circuit Court.

1. Attachment.—Where vendor held land subject to an attachment thereon, grantee in deed from him took only such title as he could convey.

2. Appeal and Error.—Where a mother mortgaged land for accommodation of her sons, and on sale under the mortgage one son bid in the land and took title to himself, trial court's finding that son did not agree to bid in land and take title to himself on condition that

he would pay mother $1,000 for it is binding on appeal, where evidence raises doubt as to existence of agreement, and force must be given to fact that, after purchase of land by son, he executed mortgage thereon to a third person.

W. L. KASH for appellant.

E. C. HYDEN far appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

The Hazard Lumber & Supply Company brought this action December 6, 1924, against C. H. Hurst, Pearl Hurst, his wife, and the Hargis Commercial Bank & Trust Company, asserting a mechanic's lien on a house and lot in Jackson for $509.71, and seeking an enforcement of the lien. The Hargis Commercial Bank & Trust Company filed answer, which was made a cross-petition against Hurst and wife, setting up mortgages executed by them to it for the sum of about $4,000, and praying the enforcement of the mortgage lien. The mortgages covered the house and lot in Jackson, also four tracts of land in Wolfe county, which were a part of the estate of W. L. Hurst, Jr., at his death, indicated in the records as lots 1, 2, 5, and the M. C. Hurst lot. The last mortgage was executed to the bank on December 10, 1924.

In April, 1925, C. H. Hurst left the state. On February 19, 1926, Pearl Hurst filed her answer and cross-petition, in which she alleged that her husband was a non-resident; that she owned one-half of the house and lot in Jackson and had a homestead therein; that the other property was sufficient to pay the bank, and asked that the lien of the bank be first enforced against the other land. On February 22, 1926, M. C. Hurst filed her intervening petition, in which she alleged that her lot, named in the mortgage to the bank, had been mortgaged by her for the accommodation of her sons C. H. Hurst and Ben Hurst, and that, when it was sold under the mortgage under an order of the Wolfe circuit court, she had an agreement with C. H. Hurst, by the terms of which he should bid in her lot at the sale and take title to himself, on condition that he would pay her the sum of $1,000 for the land; that he did bid in the land under this agreement, but had not paid her $1,000, or any part of it, except $10, and that she had a lien on the land to secure the payment of the balance. Pearl Hurst filed an answer to the petition of M. C. Hurst, denying its allegations,

and pleading facts showing that M. C. Hurst was divested of title to the land by the proceeding in the Wolfe circuit court. She also alleged that she had brought a suit against her husband for alimony and maintenance, and in that action had taken out an attachment which was levied on the land, and had been sustained by the court by judgment legally entered at the March term, 1925, adjudging her $3,000, and the further sum of $100 a month and also adjudging her a lien on the land to secure the payment of the money.

M. C. Hurst, on July 30, 1926, filed an amended answer pleading that C. H. Hurst had by deed, duly acknowledged, conveyed her lot to her on March 11, 1926. Proof was taken, and, the case being submitted and the debt of the Hazard Lumber & Supply Company having been paid, the court entered judgment directing a sale of all the land in Wolfe county to pay, first the bank, and then the judgment of Pearl Hurst. M. C. Hurst appeals.

In so far as M. C. Hurst's rights rest upon the deed executed to her by C. H. Hurst in March, 1926, clearly she is subordinate to the attachment levied on the land by Pearl Hurst more than a year before. After the land was levied on under the attachment, C. H. Hurst could convey to his mother, M. C. Hurst, only such title as he had. He then held the land subject to the attachment, and she took the land under the deed just as he held it.

The claim of the mother, M. C. Hurst, under her original petition, is not sustained by the evidence. The proof does not show that there was any agreement between the mother and the son before the sale of the land under which he was to bid it in, take the title to himself, and pay her $1,000 for the land. Appellant testifies that he told her after the sale that, as her land had been sold for his debt, he would pay her $1,000 for the land, also $600 that he owed her, if she would take no steps to set aside the sale; but, for all that appears, this was, as then understood by the parties, only a promise to pay her what he owed her. She had no lien on the land, if this agreement only was to pay her the $1,000 in consideration that her land had been sold for his debt. The subsequent course of the parties confirms this view of the transaction. Her testimony is not corroborated. The money was not paid; no steps were taken to open the sale or enforce the agreement. The evidence is not satisfactory that she took no steps to set aside the sale by reason of the agreement. The rule of the court is not to disturb the finding

of the chancellor where the mind is left in doubt as to the truth, and some force must be given the fact that after this C. H. Hurst executed a mortgage on this land to the bank.

Judgment affirmed.